# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CORY GOECKS,**

    Plaintiff,

    v.    Case No. 21-CV-01107-SCD

**KILOLO KIJAKAZI,**
  *Acting Commissioner of Social Security,*

    Defendant.

## DECISION AND ORDER

    Cory Goecks applied for social security disability benefits based on a combination of physical and mental health issues. His claim was denied, and the denial was affirmed by an administrative law judge (ALJ) employed by the Social Security Administration (SSA). The Appeals Council affirmed.

    Goecks now seeks judicial review of the ALJ's decision because he believes (1) that the ALJ did not apply the correct standards in evaluating the persuasiveness of medical opinions; (2) that the ALJ did not properly assess his residual functional capacity (RFC); and (3) that the ALJ did not adequately address Goecks' subjective complaints of pain in finding him not disabled. Because I agree with Goecks that the ALJ did not apply the proper standard to evaluate medical opinions and because the ALJ did not address Goecks' subjective complaints of pain, I will reverse the denial of benefits and remand for the ALJ to reconsider the evidence and provide a more in-depth explanation of his decision.

## BACKGROUND

### I. Goecks' History and Hearing Testimony

Cory Goecks was forty-five years old at the alleged onset of his disability. R. 24.[1] Goecks has a high school education. R. 35. Goecks' relevant work history includes work as an insurance investigator and a deputy sheriff. R. 37-38. He last worked as a Marquette County Jail guard, and he was terminated from this position for falling asleep on the job. R. 35-36.

As part of the disability benefits application, he completed a psychological consultative evaluation with Dr. Dennison, who, after completing various tests with Goecks, found that Goecks' ability to withstand routine work stress would be "severely limited." *See* R. 848-855. Several state psychological consultants also had the opportunity to review Goecks' medical files and assess the degree to which Goecks' psychological symptoms interfered with his ability to work. *See* R. 68-70, 84-86.

The ALJ's opinion provides very little background on Goecks outside of information in medical providers' notes. However, during the hearing before the ALJ, Goecks had the opportunity to testify about his personal and medical history. *See* R. 29-57. I will pull most of the facts in this section from the transcript of that testimony. Goecks testified that he underwent back surgery but continued to experience random episodes of muscle pain tension in his back. R. 39-40. In addition, he suffered from arthritis in his hips and pain in his feet that interfered with his ability to walk and stand without pain. R. 39-41. He treated these issues with pain medication and muscle relaxers, which he alleged cause him to fall asleep randomly and uncontrollably. R. 39. Goecks testified that he spent most of the day in his recliner chair

---

[1] The transcript and record are filed on the docket at ECF No. 8 to ECF No. 8-17.

to take the pressure of his weight off of his hips and back, or in his massage chair to help his back pain. R. 40-41. His pain worsened after doing household chores like sweeping or cooking. R. 43. Goecks testified that he had difficulty sleeping due to this pain as well. R. 44. Goecks also suffered from diabetes. He testified that his diabetes was under control, but that he still experienced some related numbness and neuropathy in his feet. R. 41-42.

In testifying about his mental health, Goecks explained that his anxiety made it hard for him to sit still and that he was constantly fidgeting. R. 44. Goecks struggled with depression and suicidal ideation related to his pain and testified that he saw little improvement in these symptoms with therapy and antidepressants. R. 45. He testified that he had a hard time focusing on tasks like reading. R. 46. Goecks also went to the gym to do upper body strength training but could not do lower body strength training or cardio. R. 48-49.

The ALJ also heard testimony from a Vocational Expert (VE). The VE testified that an individual with the same background as Goecks and with an RFC equivalent to the RFC ultimately assigned to Goecks would not be able to perform Goecks' past relevant work as a fraud investigator or deputy sheriff. R. 51-52. The VE testified that the hypothetical person would still be able to perform jobs available in significant numbers in the national economy, such as a table worker, a dial marker, and an ink printer. R. 52. In response to questioning by Goecks' attorney, the VE testified that adding a sit/stand option to the RFC would not preclude Goecks from working in any of the positions previously identified. R. 54. However, the VE did testify that a person with the same RFC as the one assigned to Goecks would be precluded from all those jobs if he would be absent more than twice a month or was off task more than 15% of the day. R. 53.

## I. The ALJ's Opinion

The ALJ issued a ten-page decision on January 13, 2021, denying Goecks' claim. *See* R. 16-25. In applying the five-step disability evaluation framework,[2] the ALJ found at step one that Goecks had not engaged in substantial gainful activity since the alleged onset of disability. R. 18. At step two, the ALJ found that Goecks had the following severe impairments: degenerative disc disease, obesity, diabetes mellitus, hip degenerative joint disease, pes planus (flat feet), depressive disorder, and pain disorder/somatic symptom disorder. *Id.*

At step three, the ALJ found that Goecks' impairments did not, singly or in combination, meet or medically equal the severity of a Listing impairment. R. 19. In finding that Goecks' mental impairments did not result in a Listing-level impairment, he considered Goecks' functioning in the four paragraph B categories. *Id.* The ALJ found that Goecks had mild limitations in the categories of understanding, remembering, or applying information and adapting and managing himself. R. 19-20. The ALJ found that Goecks had moderate limitations in interacting with others and concentrating, persisting, and maintaining pace. R. 19.

The ALJ then determined that Goecks had the residual functional capacity to perform light work with several additional limitations, including a limitation that Goecks could only walk or stand for four hours of an eight-hour workday. R. 20. Goecks was further limited to simple routine repetitive tasks and to "low stress work," defined as "jobs with no more than occasional changes and simple decision making." *Id.* The ALJ also restricted Goecks to only occasional interaction with the public. *Id.* In coming to this conclusion, the ALJ found that

---

[2] 20 C.F.R. § 404.1520(a)(4) outlines the process for evaluating a disability claim.

the claimant's medically determinable impairments could reasonably be expected to cause his symptoms, but also that the claimant's statements regarding the intensity and limiting effects of the symptoms was not entirely consistent with the evidence. R. 21.

The ALJ determined that medical evidence indicated that Goecks had fewer physical limitations from his knee, hip, and back pain than alleged. *Id*. The ALJ observed that Goecks' medical records reflected improvement in his back and leg pain following spinal surgery in 2008, and that even when some of the pain returned years later, medical records from the VA in 2017 show that he failed to take prescribed pain medications regularly and was dismissed from physical therapy. *Id*. The ALJ also noted that despite Goecks' spinal MRIs showing some disc degeneration and neural foraminal narrowing, Goecks was still able to perform some physical exercise. *Id*.

The Appeals Council denied Goecks' request for review on July 19, 2021, *see* R. 1-6, making the ALJ's decision a final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On September 22, 2021, Goecks filed this action seeking judicial review of the decision denying his claim for disability benefits under 42 U.S.C. § 405(g). *See* ECF No. 1. His case was assigned to me, and all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF No. 3, 6. Goecks filed a brief in support of his disability claim, ECF No. 9; Kijakazi filed a brief in support of the ALJ's decision, ECF No. 11; and Goecks filed a reply brief, ECF No. 12.

## APPLICABLE LEGAL STANDARDS

Under 42 U.S.C. § 405(g), a claimant may seek judicial review of a final administrative decision of the Social Security Commissioner. In such a case, a judge has the power to affirm,

reverse, or modify the Commissioner's final decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991). The court can remand a matter to the Commissioner in two ways: it may remand "in conjunction with a judgment affirming, modifying, or reversing the [Commissioner's] decision," or it "may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner's] decision." *Id.* Here, Goecks seeks remand in conjunction with a decision reversing the Commissioner's decision.

The court will reverse the Commissioner's final decision only if the denial of disability benefits is "based on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Substantial evidence simply means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The court "may not re-weigh the evidence or substitute its own judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). It is limited to evaluating whether the ALJ has built an "accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Goecks argues that the ALJ made three harmful errors in his evaluation. First, he argues that the ALJ did not adequately address the consistency and supportability of several medical opinions. Second, Goecks asserts that the ALJ failed to account for all of his limitations in the RFC. Finally, Goecks alleges that ALJ improperly discredited evidence supporting Goecks' subjective claims of debilitating pain.

## I. Persuasiveness of Medical Opinions

ALJs must evaluate the persuasive value of medical opinions under standards set by the SSA. *See* 20 C.F.R. § 404.1520c. ALJs must consider various factors, the most important of which are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Supportability concerns how internally well-supported the opinion is, or how much relevant objective medical evidence and supporting explanation the medical source provides within the opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is the degree to which a medical opinion comports with other evidence in the record. C.F.R. § 404.1520c(c)(2). An ALJ *must* discuss both factors in evaluating the persuasive value of a medical opinion. 20 C.F.R. § 404.1520c(b)(2).

### A. Limited ability to withstand routine work stresses

The ALJ briefly explained that he found the opinion of Dr. Dennison, the consultative examiner, "minimally persuasive" because "there is no basis for severe limitations in routine work stress," as "the mental status examination was largely normal, and records do not support significant issues with memory loss, confusion, or fatigue." R. 23. According to Goecks, the ALJ erred by not finding Dennison's opinion persuasive because it was supported by his confusion and uncertainty in answering Dr. Dennison's questions, his diminished memory, and his need to pause between questions and have questions repeated. Goecks also claimed that the opinion was consistent with other evidence in the record, including a PHQ-9 score indicating severe depression, suicidal ideation, difficulty following instructions, and difficulty finishing tasks.

I am limited to determining whether the ALJ had substantial evidence to justify his finding that the opinion was not supported or consistent and cannot consider whether I personally would come to the same conclusion. Because I find that the ALJ had substantial

evidence supporting his determination that this opinion was not well-supported or consistent, I find that the ALJ did not err by disregarding this opinion. For starters, the cited evidence, even taken as true, do not necessarily support a *specific* finding that Goecks could not withstand routine work stress. Most of the supporting evidence provided by Dennison and reiterated by Goecks is general in nature, such as "uncertainty" and "confusion" (R. 851), "limited formal judgment" (R. 853), and "increased symptoms of depression and anxiety," (R. 854). Moreover, as the ALJ said, the majority of the exam findings were normal: his "thought processes were adequate and intact;" he had only "minor problems with immediate memory;" he had a normal fund of knowledge; "showed adequate ability to maintain concentration on simple sequential tasks;" "did well" with abstract thinking; and even though Dr. Dennison observed "limited" formal judgment, she did not explain what part of the exam supported that finding. R. 852-853. Dr. Dennison did not connect her examination findings and her opinion that Goecks could not withstand routine work stress, so the ALJ was free to find that there was not a close enough connection to render that opinion "supportable."

Furthermore, the ALJ did not err by finding this opinion inconsistent with other evidence. Goecks cites several pieces of evidence as consistent with Dennison's opinion that he was limited in his ability to withstand routine work stress, including his tendency to fall asleep at inopportune times, depression with suicidal ideation, forgetfulness, and difficulty concentrating and following instructions. However, these pieces of evidence suffer from the same deficiency as the supporting evidence cited in Dr. Dennison's opinion: they do not directly connect to the opinion at issue. None of this evidence bears any direct relation to Goecks' ability to withstand routine work stress. Evidence from the consultative exam certainly could have supported Dennison's finding that Goecks had serious medical

limitations, and other evidence in the record was consistent with the same finding, but that did not necessarily require the ALJ to adopt Dennison's particular, non-specific finding of "severe limitations" in withstanding routine work stress. This was not, as Goecks alleges, the ALJ substituting his own lay opinion for the opinion of a medical expert. The ALJ did not opine that Goecks does not suffer from depression or opine that Dr. Dennison exaggerated the degree of Goecks' condition. Instead, the ALJ merely observed that Dr. Dennison did not provide a factual nexus between Goecks' condition and his alleged limitation in handling stress, and as such, the ALJ found her opinion unpersuasive. The ALJ was free to find Dr. Dennison's opinion unpersuasive after addressing both its supportability and consistency.

### B. Concentration, Persistence, and Pace Limitations

Goecks also alleged that the ALJ wrongfully found unpersuasive the state psychological consultants' opinions that he could only work in two-hour segments. R. 69, 85. On initial consideration of Goecks' disability benefits application, psychological consultant Dr. Bard found that Goecks could "concentrate for 2 hours at a time with normal breaks but will have problems with concentration for extended periods of time." R. 69. Psychological consultant Dr. Kocina found on reconsideration that "depression may cause occasional disruptions to [Goecks'] ability to focus during the workday, but he would be able to perform at least simple work for 2 hrs duration," and noted that Goecks "may also struggle with occasional tardiness." R. 85. The ALJ said that he found the consultants' opinions "generally persuasive," but also that there is "no evidence of appropriateness for [the tardiness limitation], nor is the claimant's ability to concentrate diminished to 2-hour increments given the lack of objective support for such a limitation." R. 23. The ALJ does not address the consistency of the psychological consultants' opinions with other evidence in the record. In

failing to discuss the opinions' consistency with other evidence, the ALJ committed legal error. 20 C.F.R. § 404.1520c(b)(2). "The regulation . . . states that supportability and consistency are the most important factors. The regulation, therefore, . . . requires the ALJ to consider supportability and consistency in every case." *Wainman v. Saul,* No. 20-CV-3140, 2021 WL 1759262, at *14 (C.D. Ill. May 4, 2021). "The most important factors are the opinion's supportability and consistency . . . . These are the factors the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. . . . Failure to adequately discuss supportability and consistency requires remand." *Rhonda C. v. Kijakazi,* No. 120CV01932DLPTWP, 2022 WL 806767, at *4 (S.D. Ind. Mar. 17, 2022).

I cannot say that this error is harmless as a matter of law. An error is harmless when the court is convinced that the ALJ would reach the same result on remand. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). Where an ALJ evaluates the persuasive value of evidence based on incorrect standards, it is not clear that the ALJ would reach the same result on remand. After considering both factors, the ALJ could find the psychological consultants' opinions more persuasive and determine that Goecks requires a more restrictive RFC. A more restrictive RFC could then impact the ALJ's assessment of available jobs at step five, which would ultimately affect his disability status. *See Maynard v. Saul*, No. 20-CV-677-WMC, 2021 WL 3362554, at *4 (W.D. Wis. Aug. 3, 2021) (reversing where the ALJ "failed to consider adequately whether the opinions from [the consultative examiner] and the state agency doctor opinions were consistent with or supported by relevant medical evidence.") Because the ALJ did not apply the proper legal standards in evaluating the evidence, I find that the error was not harmless.

This is not to say that the ALJ must reach a different conclusion on remand. However, the ALJ must at least discuss in what ways the opinions are or are not supported, and to what degree they are consistent with other pieces of evidence. On remand, the ALJ should consider specifically how Goecks' conditions might affect his concentration and whether and for how long defendant would be off task on a normal workday.

## II. RFC Limitations

Goecks disputes two particular aspects of the RFC assigned to him by the ALJ. First, Goecks contends that the RFC failed to properly account for moderate limitations in his ability to concentrate, persist, and maintain pace by declining to include a limitation for tardiness and off-task time. Second, Goecks argues that the RFC did not provide sufficient physical limitations to accommodate the combined effect of all his physical conditions.

As already mentioned, the ALJ erred by failing to apply the correct standard to evaluate medical opinions. These opinions directly relate to the allegedly insufficient RFC limitations in concentration, persistence, and pace. While I cannot find as a matter of law that the ALJ was required to include additional limitations, on remand, the ALJ must better explain his reasoning for including or excluding such limitations in any subsequent RFC.

I also agree that the RFC did not consider the combined effect of all Goecks' physical impairments. Of note, the ALJ did not make a single mention of Goecks' obesity and did not consider Goecks' own subjective testimony related to his pain (further described below). On remand, the ALJ must provide a more thorough explanation of how Goecks' conditions in combination affect his RFC.

### III. Goecks' Subjective Reports of Pain

An ALJ "must consider subjective complaints of pain if a claimant has established a medically determinable impairment that could reasonably be expected to produce pain." *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir, 2014). "[W]here medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations." *Zurawski*, 245 F.3d at 887. Furthermore, an ALJ is obligated to provide a "fair and impartial presentation" of the evidenc" in order to "permit an informed review." *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986) (internal citations omitted).

Here, the ALJ erred by failing to provide sufficient explanation of the evidence, including Goecks' self-reported symptoms, to permit informed review. Goecks had several medically determinable impairments that allegedly cause him pain, including degenerative disc disease, hip degenerative joint disease, pes planus, and pain disorder. R. 18. The ALJ found Goecks' "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with medical evidence." R. 21. However, "we are left to ponder what exactly are these 'inconsistencies' because the ALJ provided no further explanation." *Zurawski*, 245 F.3d at 887. The ALJ never discussed Goecks' testimony at the hearing, or any other evidence that might favor finding a more restrictive RFC. In fact, much of the opinion is boilerplate, and provides little to no background on Goecks himself or how his conditions allegedly affect his everyday life and ability to work. On remand, the ALJ must provide a more thorough review of *all* the evidence, and not just the evidence supporting his conclusions. If the ALJ again finds Goecks' statements regarding the intensity of his symptoms to be inconsistent with medical evidence, he must explain why and in what ways.

# CONCLUSION

For the foregoing reasons, I find that substantial evidence does not support the ALJ's decision. Thus, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** the matter to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision.

**SO ORDERED** this 1st day of February, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge